**Marion E. PLATO et al.**

v.

**Richard L. ROUDEBUSH, etc.**

**Civ. No. B–74–641.**

United States District Court,
D. Maryland.

May 6, 1975.

---

Dennis W. Carroll, C. Christopher Brown and Herbert L. Singleton, Jr., Baltimore, Md., for plaintiffs.

Jervis S. Finney, U. S. Atty., and Parker B. Smith, Asst. U. S. Atty., Baltimore, Md., for defendants.

BLAIR, District Judge.

In this case, Marion Plato and Robert Trail,[1] for themselves and others similarly situated, challenge the notice and hearing procedures used by the Veterans Administration (V.A.) in connection with suspending veterans' pension benefits. The request that a class be certified was earlier granted. The first issues to be faced in this case pertain to whether this court has jurisdiction to hear the plaintiffs' claim. The jurisdictional question has two aspects: (1) did Congress, by enacting 38 U.S.C. § 211(a), prohibit review by a federal court of plaintiffs' constitutional attack on the V.A.'s refusal to provide a pre termination hearing?, and (2) assuming that § 211(a) does not bar this action, does this court have jurisdiction under any statutory grant of jurisdiction to federal district courts? After the jurisdictional issues, this court must contend with the substantive constitutional claims of the named plaintiffs and their class.

### The Facts

Addressing the class representatives first, the essential facts in this case can be simply stated. Marion Plato, the wife of a World War II veteran, applied for veterans' widows' benefits following her husband's death in 1973. See 38 U.S.C. § 541. Her application was approved, and she began receiving monthly widows benefits, as of July 1, 1973, in the amount of $87.50. These benefits were increased in January 1974 to $96.-00 per month.

At some time during the spring of 1974, the Veterans Administration learned, from a form completed by Mrs. Plato, that in 1962 and while separated from her husband she had given birth to a son by a man other than her husband. On the basis of this fact, the Veterans Administration questioned her status as a "widow" within the meaning of the relevant legislation. See 38 U.S.C. §§ 541, 101(3), 103.[2] By letter dated May 28, 1974, the V.A. Regional Office in Baltimore informed Mrs. Plato that her benefits had been suspended effective June 1, 1974 pending further investigation of her eligibility. She was informed that to obtain further benefits she would have to submit various certified statements by her and by third persons to support any claim by her for further benefits. The letter of notice made no mention of a right to a hearing.

Since May 1974, Mrs. Plato has received no veterans' benefits. Although with the aid of a lawyer she obtained a hearing concerning the facts in dispute on December 20, 1974, a decision was not rendered until February 1975, more than eight months after her benefits were halted.[3] Since she stopped re-

---

1. Robert Trail's motion to intervene as named party plaintiff is granted. A hearing was held on his status and his claim in March 1975, and counsel for the defendant conceded that Trail is a pension recipient whose benefits were suspended without a prior hearing.

2. It is conceded by the defendant that the mere fact that Mrs. Plato had a child by a man other than her husband, during a period of separation from her husband, does not automatically preclude her from receiving widows' benefits. Factual issues concerning the cause of any separation of the wife from the veteran during their marriage, and the nature of the relationship between the widow and any men other than her husband would have to be resolved before her entitlement could be determined. See 38 U.S.C. §§ 101 (3), 103.

3. Although she has now received a post-termination hearing and an unfavorable ruling, Mrs. Plato remains a proper class representative. The class which she represents was certified and defined prior to the Veterans Administration's ruling on her entitlement to benefits, the class continues to have a live controversy against the Veterans Ad-

ceiving veterans' benefits, Mrs. Plato has been dependent upon public assistance from the Baltimore City Department of Social Services. According to her affidavit, the amount received from that source is insufficient for the support of herself and her son.

Robert H. Trail is a veteran who, through January 1975, was receiving a monthly pension for a non-service-connected disability. According to his affidavit, Mr. Trail was advised in December 1974, by letter from the V.A., that his disability pension would soon be terminated or suspended. The reasons for the termination included the possibilities that he was not married and that he was receiving too large an income from outside sources.[4] After receiving the notice which warned of termination, Mr. Trail requested a hearing on his right to continued benefits. Despite his request, he was not accorded a presuspension or pretermination hearing, and he received no benefits check in February 1975.

▌▌ Although somewhat better off than Mrs. Plato, like her, Mr. Trail is a low income individual. Without his pension, Mr. Trail and his wife have a combined annual income of approximately $4,464 and, at present, they have $400 in unpaid medical expenses. At the time his benefits were terminated, Mr. Trail was receiving $143 per month, and his attorneys believe that he is now entitled to $106 per month. Following a mid-March hearing, the V.A. fixed Trail's benefits at $34.56 per month based upon the assumption Trail is not legally married. A ruling upon the question of the legality of Trail's marriage, and, thus, whether he is entitled to an additional $72 per month, has been deferred pending the resolution of a civil domestic action in the State of Washington.[5]

The V.A.'s policy regarding procedures for suspensions and terminations is governed by 38 C.F.R. § 3.103. Section 3.103(a) makes the general statement of policy:

> *Statement of policy.* Proceedings before the Veterans Administration are ex parte in nature. It is the obligation of the Veterans Administration to assist a claimant in developing the facts pertinent to his claim and to render a decision which grants him every benefit that can be supported in law while protecting the interests of the Government. This principle and the other provisions of this section apply to all claims for benefits and relief and decisions thereon within the purview of this part.

Section 3.103(b) indicates that any evidence, "whether documentary, testimoni-

ministration, and the matter is one which is capable of repetition yet evading review. *See Board of School Comm'rs of the City of Indianapolis v. Jacobs,* 420 U.S. 128, 95 S. Ct. 848, 43 L.Ed.2d 74, 43 U.S.L.W. 4238 (February 18, 1975); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, 43 U. S.L.W. 4230, n. 11 at 4232 (February 18, 1975); *Sosna v. Iowa,* 419 U.S. 393, 95 S. Ct. 553, 42 L.Ed.2d 532, 43 U.S.L.W. 4125, 4127–29 (January 14, 1975); *Lewis v. Sandler,* 498 F.2d 395, 397–98 (4th Cir. 1974).

4. According to 38 U.S.C. § 521(c), a married veteran with a non-service-connected disability is entitled to a monthly pension if his annual income from other sources does not exceed $4200. (*See* 38 U.S.C. §§ 503, 521(f)(1) for computation of annual income). Mr. Trail states in his affidavit that, in light of his annual income from other sources, he is entitled to a monthly pension of $106. (He admits that the $143 per month which he was receiving is too high). Regardless of the merits of his claim, a bona fide issue of fact and law existed, and it is sufficient to support his demand for a presuspension hearing.

5. Mr. Trail's position as a proper class representative is even more secure than Mrs. Plato's. *See* nn. 1, 3, *supra.* Although he has now received a post-termination hearing, the ruling on his claim was favorable in part, and he continues as a pension recipient. Thus, he still faces the prospect of his benefits being suspended or further reduced, at some future time, without a prior hearing. Also, the defendant cannot claim that the post-termination hearing and ruling mooted Trail's petition since it was the defendant's request for an extension of time to file an answer to Trail's motion which delayed this decision until after the defendant's ruling on Trail's pension claim.

al, or in other form," which is offered by the claimant, is to be made part of the administrative record.

Section 3.103(c) states "Upon request a claimant is entitled to a hearing at any time on any issue involved in a claim within the purview of this part." That subsection goes on to state how the hearing is to be conducted and financed, and it explains that the purpose of the hearing is to permit the claimant to produce evidence.

Finally, § 3.103(e) provides for "Notification of decisions." It states,

The claimant will be notified of any decision affecting the payment of benefits or granting relief. Notice will include the reason for the decision and the date it will be effectuated as well as the right to a hearing subject to paragraph (c) of this section. The notification will also advise the claimant of his right to initiate an appeal by filing a Notice of Disagreement. . . . Further the notice will advise him of the periods in which an appeal must be initiated and perfected.

From the regulations and the cases of Mrs. Plato and Mr. Trail, the defendant's policies regarding the suspension of benefits appear. In a given case, the V.A. makes its initial decision to suspend or to reduce benefits by a procedure which is "ex parte in nature." *See* 38 CFR § 3.103(a). Following the making of that decision, the recipient is notified of the fact of the decision, of the reason for the decision, and of "the date it will be effectuated." 38 CFR § 3.-103(e). Although the regulations provide for that notice to alert the claimant to the right to a hearing, it appears from the letter of notice to Mrs. Plato that the right to a hearing is not always mentioned.

As to the timing of the hearing, 38 CFR § 3.103(c) provides that "[u]pon request a claimant is entitled to a hearing at any time." However, since the first notice to the pensioner that there is a problem warranting a hearing follows the making of the decision to suspend the pension, the right to a hearing "at any time" means, as a practical matter, the right to a post-suspension hearing. This conclusion is borne out by the cases of the named plaintiffs who, despite prompt requests for hearings, were without benefits for substantial periods of time before obtaining hearings and decisions. Also, in the case of Mrs. Plato, so little advance warning was given that she could not possibly have obtained a hearing prior to the effective date of the suspension—a letter dated May 28, 1974 was the first notice that the check which she expected on June 1, 1974 would not arrive.

■ Thus, it appears from the regulations and the cases of the named plaintiffs, that the defendant does not accord a pension recipient a right to a meaningful hearing prior to the suspension or reduction of pension benefits.

As stated in this court's Order of February 21, 1975 (with one limiting modification here added), the class consists of all persons whose individual V.A. monthly *pension* benefits have been or may in the future be administratively reduced, terminated or suspended without first being afforded adequate advance notice and the opportunity for a hearing prior to the change in monthly pension benefits.

### 38 U.S.C. § 211(a)

■ To the extent relevant here, § 211(a) of Title 38, provides:

On and after October 17, 1940, . . . the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

This section, the defendant argues, precludes any review by a court of the

United States of plaintiffs' constitutional claims in this case. That is, the defendant would have this court hold, not only that § 211(a) deprives it of jurisdiction to review the merits of the Administrator's decision, but also that § 211(a) exempts the Administrator's procedural policies from any constitutional review by federal courts. The plaintiffs, on the other hand, while conceding that they are not entitled to review of the merits of their requests for continued benefits argue that Congress did not intend to insulate the V.A.'s procedures from judicial review for unconstitutionality. For the reasons stated below, this court agrees with the plaintiffs that their narrow constitutional claims are not sheltered from judicial scrutiny. *See Taylor v. United States,* 385 F.Supp. 1034, 1036 (N.D.Ill.1974).

One year ago, in *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court held that 38 U.S.C. § 211(a) does not bar federal courts from reviewing the constitutionality of veterans' benefits legislation. *See also Hernandez v. Veterans' Administration,* 415 U.S. 391, 94 S.Ct. 1177, 39 L.Ed.2d 412 (1974) (companion case). The Court reached that conclusion before ruling on a challenge to the congressional failure to provide veterans' benefits to conscientious objectors who do alternative service. Although the challenge in *Johnson v. Robison* is distinguishable from the one in this case—in that *Johnson v. Robison* involved a challenge to the underlying legislation itself—the Supreme Court's extensive analysis of the legislative history and intent behind § 211(a) is significant here. It strongly supports this court's view that plaintiffs' challenge to defendant's refusal to grant a pretermination hearing is not barred by § 211(a).

The Supreme Court's construction of § 211(a) began with the language of the section. *Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974). The Court wrote,

Plainly, no explicit provision of § 211(a) bars judicial consideration of appellee's constitutional claims. That section provides that "the *decisions* of the Administrator of any question of law or fact *under* any law administered by the Veterans' Administration providing benefits for veterans . . . shall be final and conclusive and no . . . court of the United States shall have power or jurisdiction to review any such decision . . . .." . . . The prohibitions would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. (The Court's emphasis).

In other words,

A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts. (Emphasis added).

Review of the legislative history convinced the Supreme Court that Congress did not intend to bar judicial review of *constitutional* questions. *Johnson v. Robison, supra* at 368, 94 S.Ct. at 1166. The Court stated,

Nor does the legislative history accompanying the 1970 amendment of § 211(a) demonstrate a congressional intention to bar judicial review even of constitutional questions.

According to the Court, Congress had "two primary purposes" in enacting and preserving the no review clause:

(1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.

*Id.* at 370, 94 S.Ct. at 1167. And, with regard to § 211(a)'s most recent amend-

ment, the Court determined that "[t]he legislative history of the 1970 amendment indicates nothing more than a congressional intent to preserve these two primary purposes." *Id.* at 371, 94 S.Ct. at 1167. The thrust of the 1970 amendment, it noted, was clearly designed to strike down a line of decisions in the District of Columbia Circuit which had permitted judicial review of the *merits* of certain individual veterans' claims.

The Court concluded that "neither the text nor the scant legislative history of § 211(a) provide the 'clear and convincing' evidence of congressional intent required by this Court before a statute will be construed to restrict access to judicial review." *Id.* at 373–74, 94 S.Ct. at 1169. *Cf. Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ In this case, plaintiffs do not challenge the underlying benefits legislation, as was done in *Johnson v. Robison.* But, neither do they seek review of any "*decisions* of the Administrator on any question of law or fact *under* any law . . . providing benefits for veterans and their dependents or survivors. . . ." That is, plaintiffs do not challenge an "interpretation or application of a particular provision of the statute to a particular set of facts." *See Johnson v. Robison,* 415 U.S. at 367, 94 S.Ct. at 1166. Rather, plaintiffs seek constitutional review of a generally applicable procedural policy. Such review is not barred by the language of § 211(a) which is directed at review of individualized decisions and at the development of a consistent body of interpretations of veterans' benefits legislation.

Furthermore, in undertaking to review the V.A.'s practice of suspending or terminating benefits without according the claimant a prior hearing, this court will collide with neither of Congress' primary legislative purposes. Determination of the single due process is-

sue raised here will not "lead to an inevitable increase in litigation with consequent burdens upon the courts and the Veterans' Administration." *Johnson v. Robison,* 415 U.S. at 371, 94 S.Ct. at 1168. The single constitutional question rasied here is strictly one of law and it is on a matter of procedure common to all of the members of the class. No rash of litigation will be spawned by this court's reviewing as limited, albeit as important, a question as is presented here.

Nor will this court's review of this fundamental constitutional issue of procedural due process "involve the courts in day-to-day determination and interpretation of Veterans' Administration policy." *Johnson v. Robison,* 415 U.S. at 372, 94 S.Ct. at 1168. This court has not been asked to review the Administrator's determination of facts, nor to review his interpretation of the substance of any statute providing for veterans' benefits, nor to second-guess his application of law to facts. Those matters have been committed to the Administrator's judgment; and his expertise in such matters is neither contested nor threatened here. *Cf. Wickline v. Brooks,* 446 F.2d 1391 (4th Cir. 1971), *cert. denied,* 405 U.S. 981, 92 S.Ct. 1199, 31 L.Ed.2d 257 (1972); *Sager v. Johnson,* 342 F.Supp. 351 (D.Md.1972). Instead, this court has been asked to decide "constitutional questions beyond the scope of the authority of the Veterans Administration." *See Taylor v. United States,* 385 F.Supp. 1034, 1036 (N.D.Ill. 1974).

In sum, the narrow scope of review exercised in this case does not intrude upon the Administrator's broad authority to decide the merits of individual claims and to develop substantive policies under veterans' benefits legislation. Further, neither the language of the no-review clause nor the legislative history supports the defendant's assertions that plaintiffs' constitutional challenge to the defendant's procedural policies is beyond the jurisdiction of the federal courts. Certainly, there is not "the

'clear and convincing' evidence of congressional intent required . . . before a statute will be construed to restrict access to judicial review." *See Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. at 1169 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

### *Mandamus Jurisdiction—28 U.S.C. § 1361*

■ While § 211(a) does not deprive this court of jurisdiction over plaintiffs' action, there remains the question of whether any statute grants this court jurisdiction over this suit. It is firmly established that a district court has only such jurisdiction as Congress has allowed by legislation. *See McGaw v. Farrow*, 472 F.2d 952, 955 (4th Cir. 1973).

Plaintiffs' complaint alleges two bases for jurisdiction: 28 U.S.C. § 1361 and 5 U.S.C. § 701 *et seq.* Because this court finds that jurisdiction is established under 28 U.S.C. § 1361, there is no need to determine whether the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, is an independent grant of jurisdiction.[6]

■ Mandamus jurisdiction under 28 U.S.C. § 1361 has been shrouded in some doubt and confusion since it was enacted in 1962,[7] and, to date, the Supreme Court has still not ruled on the scope of that jurisdictional grant. However, a synthesis of the cases supports a finding that this court has jurisdiction to determine whether the defendant is constitutionally required to afford the plaintiffs a factual hearing prior to terminating veterans' benefits.

■ Since § 1361 grants jurisdiction to issue writs of mandamus against a federal officer, the existence of jurisdiction depends upon whether the plaintiffs' requested relief is "in the nature of mandamus" and upon whether the allegations in the complaint would support the issuance of the writ. As the scope of jurisdiction is coextensive with the availability of the writ of mandamus, it is appropriate first to discuss the operation of mandamus.

■ According to the traditional formulation, mandamus is available to compel the performance of a "ministerial duty" but "not to direct the exercise of judgment or discretion in a particular way." *Wilbur v. United States*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 324 74 L.Ed. 809 (1930). *See Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 318–19, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78, 45 S.Ct. 252, 69 L.Ed. 561 (1925); 52 Am.Jur.2d, *Mandamus* § 80 (1970). That is, mandamus is "a remedy long restricted . . ., in the main, to situations where ministerial duties of a nondiscretionary nature are involved." *Panama Canal Co. v. Grace Line, Inc.*, *supra* at 318, 78 S.Ct. at 757. In turn, it is said that "[a] duty or act is ministerial . . . when there is no room for the exercise of discretion . . . the performance being required by direct and positive command of the law." 52 Am.Jur.2d *Mandamus* § 80, at 403 (1970). Finally, under traditional formulations, mandamus is available only "where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command . . .." *Wilbur v. United States*, 281 U.S. 206, 218, 50 S.

---

6. Although the Administrative Procedure Act is frequently cited by litigants as a source of jurisdiction, neither the Supreme Court nor the Fourth Circuit has clearly ruled on that assertion. *But see Etheridge v. Schlesinger*, 362 F.Supp. 198, 201 (E.D.Va.1973); 3 Davis, *Administrative Law Treatise* § 23.02 (1970 Supp.).

7. Mandamus and Venue Act of 1962, Pub.L. 87–748, § 1(a), 76 Stat. 744 (Oct. 5, 1962). *See generally* Byse and Fiocca, "Section 1361 of the Mandamus and Venue Act of 1962 and 'Nonstatutory' Judicial Review of Federal Administrative Action," 81 Harv.L. Rev. 308 (1967).

Ct. at 324 (1930). *See McGaw v. Farrow,* 472 F.2d 952, 956 (4th Cir. 1973).[8]

However the standards are phrased, the critical issue underlying the writ of mandamus is whether the defendant has a duty to do a particular act, or, if he has discretion to choose among different courses of action, whether he has acted within that range of discretion. This proposition was stated by the Supreme Court in a widely quoted passage defining the scope of mandamus:

> Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them.

*Work v. United States ex rel. Rives,* 267 U.S. 175, 177, 45 S.Ct. at 252 (1925). The Supreme Court continued,

> The power of the court to intervene, if at all, thus depends upon what statutory discretion he has. Under some statutes, the discretion extends to a final construction by the officer of the statute he is executing. No court in such a case can control by mandamus his interpretation, even if it may think it erroneous. The cases range, therefore, from such wide discretion as that just described to cases where the duty is purely ministerial, where the officer can do only one thing which on refusal he may be compelled to do. They begin on one side with *Kendall v. United States,* 12 Pet. 524 . . .. On the other side is *Decatur v. Paulding, Secretary of the Navy,* 14 Pet. 497 . . .. Between these two early and leading authorities illustrating the extremes are decisions in which the discretion is greater than the *Kendall Case* and less than in the *Decatur Case,* and its extent and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose.

*Id.* at 177–78, 45 S.Ct. at 252.

As the quoted passage indicates, judicial review of an administrator's statutory interpretation may be very limited, since interpretation of the statute (and development of its policies) may itself be committed to agency judgment. In this vein, the Supreme Court stated in *Panama Canal Co. v. Grace Line, Inc.,*

> [W]here the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion.

*supra* at 318, 78 S.Ct. at 757. And in that same case the Court concluded,

> That does not necessarily mean that the construction of the Act, pressed on us and on Congress by petitioner, is the correct one. It does, however, indicate that the question is so wide open and at large as to be left at this stage to agency discretion. The matter should be far less cloudy, much more clear for courts to intrude.

*Id.* at 319, 78 S.Ct. 758. In other words, in such instances, the administrator gets the benefit of the doubt even in the interpretation of the statute.

Mandamus review based upon a constitutional challenge to ad-

---

8. Being of the view that "the ministerial-discretionary dichotomy is not very helpful," courts have attempted on occasion to reformulate the standards for mandamus. *See Burnett v. Tolson,* 474 F.2d 877, 880–82 (4th Cir. 1973) ; *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir. 1969). In the two cited cases, for example, the courts indicated that three coexisting factors are necessary to support a writ of mandamus :

(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.

ministrative action [9] is slightly different from review of a challenge based upon statutory interpretation. Whereas in the interpretation of a statute, a court may properly accede to the administrator's views so long as they are not in conflict with the clear language and meaning of the act, in the sphere of constitutional interpretation, the judiciary is the "ultimate interpreter of the Constitution," and must explicate the terms of that document. *See United States v. Nixon,* 418 U.S. 683, 703–05, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Powell v. McCormack,* 395 U.S. 486, 514, 548–49, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803).

> Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution.

*Baker v. Carr,* 369 U.S. 186, 211, 82 S. Ct. 691, 706, 7 L.Ed.2d 663 (1962). Thus, although decisions between competing interpretations of *statutory* language may be committed to agency discretion—placing such decisions beyond direction by mandamus—constitutional interpretation remains primarily within the purview of the judiciary. Courts must decide for themselves what the Constitution means and that power cannot be "shared with the Executive." *See United States v. Nixon, supra* at

704, 94 S.Ct. 3090, 41 L.Ed.2d 1039. Accordingly, unlike with statutory review, a court is not limited to deciding whether the administator's interpretation of constitutional provisions is arguable or rationally tenable. While respect must be accorded to the views of administrators, in constitutional matters, courts must exercise their independent judgment.

As constitutional interpretation is not committed to agency discretion, some of the popular maxims concerning limitations upon the use of mandamus to control of statutory interpretation (and administrative policy development) do not strictly apply to the exercise of judicial control over constitutional interpretation. Thus, the fact that constitutional language is not always "clear and certain" nor "so plainly prescribed as to be free from doubt" does not detract from the authority of the judiciary to interpret that document. In other words, unlike with statutory interpretation, the judiciary's authority to enforce *its* interpretation of the Constitution by mandamus is not diminished, nor an agency's increased, by the fact that the legal issue is close or difficult or susceptible to doubt. *Cf. Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2d Cir. 1971) (mandamus jurisdiction over "close" constitutional question). Of course, where the Constitution requires no particular result, selection between the constitutional options is left to the judgment of the administrator. But deciding whether the Constitution requires a particular result (or prohibits another) is manifestly a judicial function.[10]

---

9. Although occasional expressions are heard to the contrary, *see, e. g., Fifth Avenue Peace Parade Committee v. Hoover,* 327 F. Supp. 238 (S.D.N.Y.1971), *aff'd on other grounds,* 480 F.2d 326 (2d Cir. 1973), it is well settled among the circuits that mandamus jurisdiction is appropriate for reviewing constitutional questions. *See Burnett v. Tolson,* 474 F.2d 877 (4th Cir. 1973); *Mead v. Parker,* 464 F.2d 1108 (9th Cir. 1972); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2d Cir. 1971); *National Assn. of Gov't*

*Employees v. White,* 418 F.2d 1126 (D.C. Cir. 1969).

10. The distinction between mandamus in the area of statutory construction and in the field of constitutional interpretation is a limited one. Each requires the reviewing court to determine, from the language and history of the document which is the basis for the challenge, whether the administrator has discretion to choose between different courses of action. In other words, each requires a

Thus, the defendant's suggestion that this court lacks jurisdiction under 28 U.S.C. § 1361 because the issue here presented is committed to the defendant's discretion is untenable. This court cannot blindly yield to the V.A.'s interpretation of the Fifth Amendment. This court has jurisdiction under 28 U.S.C. § 1361 to proceed to the issue raised by the plaintiffs.[11]

*The Right to a Presuspension Hearing*

During the last six years, a spate of major cases have dealt with an individual's right to a hearing before the government may withdraw or take away a significant property interest. In the leading case, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that before a state agency may terminate welfare payments to an individual it must accord that person a hearing designed, at a minimum, "to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." *Id.* at 267, 90 S.Ct. at 1020. On the same day that *Goldberg* was decided, the Supreme Court announced that old-age assistance beneficiaries had a right to a pretermination hearing, as well. *Wheeler v. Montgomery*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). Since those two decisions, the Supreme Court has required pretermination hearings in several other areas of individual interests. Hearings have been required before a student may be suspended from school, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, 43 U.S.L.W. 4181 (January 22, 1975); before a tenured teacher may be fired from a state university, *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *see Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); before property may be seized under a prejudgment writ of replevin, *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *see North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed. 751, 43 U.S.L.W. 4192 (January 22, 1975); and before a driver's license may be suspended, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *Cf. Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (right to parole revocation hearing *promptly* after re-arrest).

In addition, lower courts have recognized a right to a pretermination hearing to protect citizens from possible arbitrary deprivations of numerous other entitlements. The Fourt Circuit, for example, has held that a recipient of disability benefits is entitled to an oral hearing before such benefits may be withdrawn. *Eldridge v. Weinberger*, 493 F.2d 1230 (4th Cir. 1974), *cert. granted*, 419 U.S. 1104, 95 S.Ct. 773, 42 L.Ed.2d 800 (1975). *Accord Williams v. Weinberger*, 494 F.2d 1191 (5th Cir. 1974). And, the same Court of Appeals has held that a tenant in public housing is entitled to the safeguards of a hearing prior to eviction. *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971). *See Escalera v. New York City Housing*

construction of the Constitution or of the statute, at least to that extent. But while the *form* of analysis is essentially similar in the two settings, the difference lies in where the court's search for a duty should stop. With a statute, vague language may call a halt to a court's defining an administrative duty (and therefore to its issuing mandamus). But unclear constitutional language alone does not bring mandamus analysis to a halt. The court must nevertheless go deeper to seek the meaning of the document.

11. In other cases, mandamus jurisdiction, 28 U.S.C. § 1361, has served as a basis for challenges to deficiencies in administrative notice and hearing practices. *See, e. g., Martinez v. Richardson*, 472 F.2d 1121 (9th Cir. 1973); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296 (2d Cir. 1971); *Smith v. Resor*, 406 F.2d 141 (2d Cir. 1969); *Brown v. Weinberger*, 382 F.Supp. 1092 (D.Md. 1974); *Rameaka v. Kelly*, 342 F.Supp. 303 (D.R.I.1972).

**1308**

*Authority,* 425 F.2d 853 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L. Ed.2d 91 (1970). Also, in this district, Judge Harvey recently upheld the right to a pretermination hearing of a recipient of benefits under the Supplemental Security Income program. *Brown v. Weinberger,* 382 F.Supp. 1092 (D.Md. 1974).

Despite the broad range of situations in which individuals have been held to be entitled to a hearing prior to some governmental action against them, prior hearings are not always mandated. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S. Ct. 729, 42 L.Ed.2d 725 (1975) (hearing for students suspended from school may, in emergencies, be held promptly after suspension); *Arnett v. Kennedy* 416 U. S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (government employee); *Board of Regents v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972) (untenured faculty member with one year appointment has no protected property interest); *Christhilf v. Annapolis Emergency Hosp. Ass'n, Inc.,* 496 F.2d 174 (4th Cir. 1974) (whether doctor is entitled to hearing before termination of hospital privileges depends upon circumstances). *Cf. Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

 From the numerous recent cases which deal with claimed rights, under the Due Process Clause, to notice and a hearing prior to governmental action vis-a-vis the plaintiffs, a two-stage analysis appears. First, a court must determine whether the plaintiff has at stake an interest in "life, liberty, or property" within the meaning of the Due Process Clause. If no such interest is at stake, then due process is not guaranteed by that constitutional provision. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972) (no interest in property). Second, assuming "that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Here, a court must balance the individual's interest in a pretermination hearing against the society's interest in the government's proceeding without such a hearing. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

 Applying the case law to the allegations in this case, it is clear that the plaintiffs' interest in receiving continued benefits under laws administered by the Veterans Administration is an interest in "property" within the meaning of the Due Process Clause. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Wheeler v. Montgomery,* 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). The modern definition of "property" for the purposes of due process does not turn on whether the particular interest is denominated a "right" or a "privilege." *Bell v. Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971). The concept of a protected property interest was explained by the Supreme Court in *Perry v. Sinderman*:

> "[P]roperty" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." . . . A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). In short, "[r]elevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to [other protected entitlements]." *Goldberg v. Kelly, supra* at 262, 90 S.Ct. at 1017.

Having established that plaintiffs' entitlement to benefits is protected by the Due Process Clause of the Fifth Amendment, the issue becomes what process is

due? *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). This "depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest" in summary suspension of benefits. *See Goldberg v. Kelly, supra* at 263, 90 S.Ct. at 1018.

■ Here, the plaintiffs have a substantial interest in continuing to receive pension benefits pending determination of their entitlement to such benefits. By the provisions of the law, 38 U.S.C. §§ 541–43, benefits paid to widows, to children of deceased veterans, and to veterans with non-service-connected disabilities are geared to the claimant's level of income, and anyone with even a moderate independent income is excluded. In the case of widows who have no children by the veteran, no pension is paid if the widow's annual income exceeds $3000; and the size of the monthly benefits for widows who have annual incomes of less than $3000 is inversely related to the amount of their outside income. 38 U.S.C. §§ 541(b), 503. If the widow has one child by the veteran, she may receive benefits only if her income is less than $4200, and, again, the size of the benefit is inversely related to her income. 38 U.S.C. §§ 541(c), 503. *See also* 38 U.S.C. § 543. If there is no widow entitled to receive benefits, children of a deceased veteran can receive pension benefits in their own right ($49 per month for the first child and $20 for each other child, with the total pension divided equally), but a child can get no benefits if he has an annual income (excluding earned income) of $2400. 38 U.S.C. § 542. *See also* 38 U.S.C. § 543. Similarly a veteran with non-service-connected disabilities may collect a pension if his annual income falls into the following ranges: $3000 for unmarried veterans and $4200 for married veterans. 38 U.S.C. §§ 521, 503.[12]

Insofar as plaintiff-pensioners are necessarily persons with low independent incomes—if they have any income at all—it is plain that by any erroneous termination of benefits, they would be "condemned to suffer grievous loss." *See Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011 (1970). They are certainly not in possession of such "independent resources" that they can comfortably await a delayed determination of their claims. They are in an economic position which is essentially similar to the classes of plaintiffs in *Goldberg* (welfare recipients), *Wheeler v. Montgomery*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (old-age benefits recipients), *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 54, 27 L.Ed.2d 91 (1971) (residents in public housing), and *Eldridge v. Weinberger*, 493 F.2d 1230 (4th Cir. 1974), *cert. granted*, 419 U.S. 1104, 95 S.Ct. 773, 42 L.Ed.2d 800 (1975) (claimants of disability benefits). In addition, by their precarious economic positions, they are made more vulnerable to grievous harm by reason of error than were the plaintiffs in *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (termination faculty employment), *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (seizure of property), and *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspension of driver's license). *See also Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

In the balance, on the defendant's side of the scales, is administrative convenience and the expense of paying benefits to one not entitled to them during the period prior to a hearing and decision. These considerations are precisely the same as those which the Supreme

---

12. The outside income limitations described in this paragraph are those which were put into effect on January 1, 1975. *See* Veterans and Survivors Pension and Adjustment Act of 1974, Pub.L. 93–527, §§ 2–4, 10 (Dec. 21, 1974), 88 Stat. 1702. Prior to this year, the outside income limitations were lower.

Court, in *Goldberg*, rejected as insufficient to outweigh the interests of that case's welfare-plaintiffs. *See Eldridge v. Weinberger*, 361 F.Supp. 520, 525–27 (W.D.Va.1973), *aff'd*, 493 F.2d 1230 (4th Cir. 1974), *cert. granted*, 419 U.S. 1104, 95 S.Ct. 773, 42 L.Ed.2d 800 (1975). The Supreme Court's comments in that case are equally applicable here:

> We agree with the District Court . . . that these governmental interests are not overriding in the welfare context. The requirement of a prior hearing doubtless involves some greater expense, and the benefits paid to ineligible recipients pending decision at the hearing probably cannot be recouped, since these recipients are likely to be judgment-proof. But the State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures for prompt pre-termination hearings and by skillful use of personnel and facilities.

*Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970). That Court's further conclusion in *Goldberg* is equally applicable in the veterans' pension setting:

> Thus, the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens.

*Id.*

Of course, in the termination of pension benefits the government has no tenable "emergency" requirements such as would justify dispensing with a prior hearing. *Cf. Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

█ While sensitive to the administrative problems of the Veterans Administration, the additional burden of a presuspension hearing in the pension context should not be overemphasized. The presuspension hearing need not be a full, trial-type hearing. *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L. Ed. 287 (1970). A presuspension hearing need only possess "minimum procedural safeguards, adapted to the particular characteristics of [pension] recipients, and to the limited nature of the controversies to be resolved." *Id.* at 267, 90 S.Ct. at 1020. *Cf. Richardson v. Perales*, 402 U.S. 389, 92 S.Ct. 1420, 28 L. Ed.2d 842 (1971). These minimal requirements were described by the Fourth Circuit in *Caulder v. Durham Housing Authority*:

> Succinctly stated, *Goldberg* requires (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the [claimant] to confront and cross-examine adverse witnesses, (3) the right of a [claimant] to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker.

433 F.2d 998, 1004 (4th Cir. 1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 54, 27 L. Ed.2d 91 (1971).

*Conclusion*

For the foregoing reasons, the court is of the opinion that

1. The motion of Robert H. Trail for leave to intervene as a named plaintiff should be granted;

2. The motion of the defendant to dismiss should be denied;

3. This court's Order of February 21, 1975 certifying the class of plaintiffs should be modified to define the class as consisting of all persons whose individual Veterans Administration monthly pension benefits have been or may in the future be administratively reduced, terminated, or suspended without first be-

ing afforded adequate advance notice and the opportunity for a hearing prior to the change in monthly pension benefits;

4. The plaintiffs' motion for summary judgment to the extent of their request for a judgment declaring their right to adequate notice and a hearing prior to the suspension, termination, or reduction of their pension benefits should be granted;

5. The plaintiffs' motion for summary judgment to the extent of their request for a permanent injunction, in the form of a writ of mandamus, requiring the defendant to afford all members of the class adequate notice and a hearing prior to the suspension, termination, or reduction of their individual pension benefits, in accordance with due process of law should be granted;

6. The plaintiffs' motion for summary judgment to the extent of their request for an injunction, in the form of a writ of mandamus, requiring the defendant to pay to the members of the class all monies withheld, prior to the date of judgment herein, in violation of due process of law should be DENIED.

Counsel for the plaintiffs are directed to prepare and to present to this court within twenty (20) days a proposed order for declaratory judgment and mandamus in accordance with the terms of this opinion.

It is so ordered.

## SUPPLEMENTAL OPINION AND ORDER

On May 6, 1975, this court held that the Veterans' Administration is constitutionally obligated, under the Fifth Amendment, to grant V.A. benefits recipients notice and a hearing prior to reducing, terminating, or suspending their pension benefits. The decision followed the line of Supreme Court cases which began with *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Counsel for the plaintiffs was directed to file a proposed order of judgment, which he has done. Thereafter, the defendant filed motions for reconsideration and for a stay pending appeal. And, the plaintiffs have asked this court to reconsider its decision to narrow the class to pension recipients. A hearing has been held on those motions and on the form of the final judgment.

■ At the outset, it should be stated that the motion for a stay pending appeal will be denied. The requirements for such a stay, which are set forth in *Long v. Robinson*, 432 F.2d 977 (1970), are not met in this case. Although the relief ordered may be burdensome to the V.A., it is no greater than that which due process requires and does not inflict an irreparable injury. The harm to the individual members of the class of plaintiffs caused by a stay, as the court's initial opinion makes clear, would be substantial. Likewise, the general public's interests are directly implicated by discontinuation of pension benefits to the needy and this, too, weighs against the granting of a stay. And, finally, this court does not believe that the defendant has any great likelihood of success on appeal.

The motion for reconsideration raises a more difficult question. It requests that the class be limited to exclude those individual beneficiaries whose pensions are reduced, terminated, or suspended solely on the basis of factual data which they personally have provided to the V.A. In particular, the defendant has in mind protecting the continued utility of the V.A.'s annual income questionnaire, which each pensioner completes every November, and from which the V.A. computes each beneficiary's monthly pension for the upcoming year.[1]

1. As this court understands it, each beneficiary returns the annual income questionnaire in November, detailing, among other things, actual income for the present year and projected income for the new year. That information, along with information which the pensioner supplies in the same questionnaire concerning dependents, age,

■ Thus, the question arises as to whether, after the V.A. has calculated adjustments, by simple arithmetic-type computations, using the pensioner's own written statements of facts, the V.A. must hold individual hearings on the correctness of the adjustments. This court thinks not.

■ When a beneficiary files· a statement which indicates that he will receive $3,000 of outside income, in specified categories, during the upcoming year, the V.A is entitled to believe him for purposes of calculating his benefits. As long as the individual has notice of the use to which the data will be put, the V.A. need not hold a hearing on whether the individual meant what he said when he said that he anticipated $3,000 in outside income.[2] Similarly, when the only application of law to fact involves either the comparison of a pensioner's numerical statements (e. g., age or income) with a statute's numerical standards (see, e. g., the formula set forth in 38 U.S.C.A. § 521(b) (February 1975 Supp., Vol. 1)) or a simple arithmetic computation followed by a numerical comparison of the sort just described, no opportunity for a prior hearing need be afforded.

In that narrow range of instances, the computations follow such well defined arithmetic and categorical rules that the V.A. is perfectly capable of making the calculation without the aid of the pensioner and his attorney. The slight additional protection, which would be afforded by a prior hearing in the above-described, narrow range of cases, is greatly outweighed by the enormous burdens which it could impose on the defendant. See footnote 1, supra. There is, of course, the inevitable chance that someone will make a typographical error or an error in arithmetic (although, as this court understands it, a computer does the calculations). But, that risk is slight in any given case; and, it is certainly not so substantial a risk as to outweight the V.A.'s interest in being able to act expeditiously on the millions of income questionnaires which it receives in November of each year. In any event, the risk of a typographical or arithmetic error would not be decreased by such a hearing since there would be a similar risk of a typographical or arithmetic error after a hearing—unless, of course, each pensioner were given the right to be present, with his attorney, at the time each of his checks is drawn.

and so forth, is then programmed into a central computer which mathematically determines the size of each pensioner's monthly benefits for the new year. Notices of adjustments made by the computer in this fashion are sent to the individual recipients around January 3rd or 4th. These changes are effective for the January pension check, which is mailed on February 1st.

According to the testimony of Mr. Jerome Peckarski, the Director of Compensation and Pension Services for the V.A., the logistics of this annual update are massive. In 1974, there were approximately 2,300,000 pension recipients. Almost all of these pensioners' monthly benefits were adjusted as a result of their annual income statements. At the beginning of 1974, from information in the annual income questionnaire alone, 1,400,000 pensioners had their monthly benefits increased; 700,000 had their pensions reduced; and 58,000 had their pensions terminated. For those whose pensions were reduced, the average reduction was six dollars. Furthermore, most of the adjustments resulted exclusively from the data in the income block (Block 9) of the questionnaire.

In addition, according to the V.A.'s Acting Chief Benefits Director, whose affidavit was submitted with the motion for reconsideration, in fiscal year 1974, 11,291 terminations resulted from pensioners' failures to return their annual income questionnaires.

2. Of course, a different situation would be presented if the individual made a statement which is ambiguous, or is capable of more than one construction, or is in response to a question which is capable of more than one construction. In those instances, the V.A. could not assume that the individual meant the less favorable construction, and it would have to provide an opportunity for a hearing before it could adopt the less favorable interpretation.

The Due Process Clause of the Fifth Amendment does not guarantee error-free government. It merely assures reasonable procedural protections, appropriate to the fair determination of the particular issues presented in a given case. It involves a balancing process. And, for the narrow range—albeit the large number—of benefits adjustments described above, there is too little to be gained from a prior hearing requirement to make it constitutionally necessary.

However, the narrowness of the exceptions must be emphasized. To proceed without a prior hearing, the date on which the V.A. acts must have been provided to the V.A. by the beneficiary; it must be in writing; and it must have been provided with knowledge, or at least after notice, that it would be put to the serious use of computing benefits. By contrast, if, for example, the information reached the V.A. through some other governmental agency, or if it was oral, or if it was provided without notice, or knowledge, that it would be used to compute V.A. benefits, then, because there would be a greater risk that the data would be either inaccurate, or imprecise, or couched in a form which is not suited for straightforward use by the V.A., an opportunity for a prior hearing would be required to permit the pensioner to clear up any inaccuracies or ambiguities. Likewise, to fit the case into the narrow exception from the prior hearing requirement, the data must be clear, factual (as opposed to subjective), and accepted as true. If there is any possible ambiguity, the construction most favorable to the pensioner must be accepted, or the opportunity for a prior hearing must be afforded. Finally, if the legal standard is not simply numerical in nature, then an opportunity for a hearing is required.

Counsel for the plaintiffs has acceded to the exclusion of cases involving the death of the beneficiary. In these instances, the V.A. would have no opportunity to recoup its money by future deductions, in the event of overpayment. Further, given prompt notice, a correction could easily be made and payment resumed. However, once again, the exception is narrow. The V.A. may only act if the information has been received from a reliable source, and it must send contemporaneous notice of the decision in order to permit correction of any error.

In any event, it should be noted that, even in those instances in which a hearing is not mandated, adequate and timely notice of the reduction, termination, or suspension must be sent to the pensioner. To be adequate, the notice should be in writing, and it should describe the change, the effective date of the change, and the reasons for the change. Further, the notice should inform the pensioner of the procedures for challenging the change and that a prompt hearing, either pre or post-determination, will be afforded him if one is requested. To be timely, in those instances in which a prior hearing is not required, the notice of the change should be sent either prior to the effective date of the change, or, at the very latest, contemporaneously with the change. And, in those instances in which a hearing is required before a reduction, termination, or suspension, the notice must be given long enough in advance to permit a fair opportunity for the beneficiary to request and to have a hearing.

Lastly, this court rejects plaintiffs' proposal to broaden the class to include more than simply pension beneficiaries. The only named plaintiffs are pension beneficiaries, and this court has had no occasion to reach the case of a non-pension beneficiary who is cut-off without a hearing. This court notes that recipients of certain types of benefits other than pensions (e. g., service-connected disability benefits and educational benefits) receive their benefits without regard to the amount of their outside income. Whether their interests in continuous payment is so great as to re-

quire presuspension or prereduction hearings cannot be addressed on this record.[3]

For the foregoing reasons, it is this 7th day of July, 1975, ordered:

(1) That the defendant's motion for a stay pending appeal is denied;

(2) That the defendant's motion for reconsideration is granted to the extent that the above discussion reflects a modification of the original opinion;

(3) That the plaintiffs' motion that the class be redefined to broaden it beyond those individuals described in Conclusion 3 of this Court's Opinion of May 6, 1975, is denied;

(4) That a judgment, in favor of the named plaintiffs and their class, shall be filed separately along with this opinion.

3. Since the issuance of this court's opinion of May 6, 1975, the Supreme Court has ruled on certain jurisdictional and class action questions in the context of social security review. *See Weinberger v. Salfi,* —— U.S. ——, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See generally* 42 U.S.C. §§ 405(g)–(h). After reviewing *Salfi* and the relevant statutory provisions, this court remains convinced that its decision in this case is correct.