**Robert E. DEVINE et al., and all others similarly situated, Plaintiffs-Appellees,**

v.

**Max CLELAND, etc., et al., Defendants-Appellants.**

**Robert E. DEVINE et al., Plaintiffs-Appellees,**

v.

**Max CLELAND, etc., et al., Defendants-Appellants.**

**Nos. 77–1424, 77–1430.**

United States Court of Appeals, Ninth Circuit.

Feb. 21, 1980.

Charles W. Kircher, Jr., Asst. U. S. Atty., Los Angeles, Cal., argued, Barry J. Trilling, Asst. U. S. Atty., Los Angeles, Cal., on brief, for defendants-appellants.

Scott J. Tepper, Garfield, Tepper & Ashworth, Los Angeles, Cal., for plaintiffs-appellees.

Before WALLACE and TANG, Circuit Judges, and BATTIN,* District Judge.

WALLACE, Circuit Judge:

The successful class before the district court was made up of student-veterans whose educational allowance assistance benefits were suspended, and in some cases terminated, by the Veterans' Administration (VA). The district court enjoined the Administrator of Veterans' Affairs from "any termination" of these educational benefits unless certain specified procedural requisites were met. The Administrator appeals on two grounds: first, that 38 U.S.C. § 211(a) precludes judicial review of the VA's benefit termination procedures; and second, that the procedural safeguards mandated by the district court unduly exceed the minimum requirements of procedural due process. We conclude that section 211(a) does not foreclose jurisdiction and that the district court's decree was proper. We thus affirm.

I

Pursuant to 38 U.S.C. § 1681(a), "eligible veterans," as defined in 38 U.S.C. § 1652(a)(1), are entitled to receive from the VA "an educational assistance allowance to meet, in part, the expenses of the veteran's subsistence, tuition, fees, supplies, books, equipment, and other educational costs." On or about December 10, 1975, the VA notified approximately 1,000 such veterans attending Citrus College in Azusa, California that their educational benefits were suspended. This notification was the first indication that any of the affected students received concerning suspension of benefits. It informed each student why benefits were being suspended, and in relevant cases, indicated an amount of past overpayments that would be recouped from the student prior to resumption of payments. An enclosure contained details of various available post-termination remedies, including a personal hearing before the VA and an appeal to the Board of Veterans Appeals.

The suspensions were caused by Citrus College's recordkeeping practices. The award of educational assistance payments to an "eligible veteran" can be authorized only if the school which the veteran attends, and the courses he takes there, meet the requirements of the relevant statutes (38 U.S.C. §§ 1671, 1683, 1772, 1790(b)). Schools in which "eligible veterans" are enrolled must certify a veteran's enrollment

* Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation.

to the VA, and report changes in enrollment, withdrawals, overall course load and individual courses taken. 38 U.S.C. §§ 1780, 1784(a). Suspension of a veteran's benefits occurs, as it did in this case, when the evidence supplied by the school causes the Administrator to find that the *school* has violated the statutory requirements. 38 U.S.C. § 1790(b).

On December 12, 1975, two days after the class members received notification that their benefits were suspended, the VA lifted its suspension of Citrus College's eligibility as a school. Sometime shortly thereafter the VA reinstated the benefits of approximately 600 of the 1,029 affected student-veterans. The remaining 400 either had their payments reinstated subject to a set-off for past overpayments, or were fully terminated.

At the time the district court granted the injunction, neither the statutory scheme embodied in 38 U.S.C. § 1651 *et seq.,* nor the regulations promulgated thereunder by the VA for administration of educational benefits, *see generally* 38 C.F.R. § 21.4001 *et seq.,* contained any provision regarding pre-termination procedures.[1]

The district court's order was as follows:

(a) At least 30 days advance written notice of an intended termination of educational benefits shall be given to the veteran describing in detail the basis in fact and law for the intended termination as hereinafter provided.

(b) The opportunity, within such notice period, to question and contest the intended termination decision, which shall include the following rights:

(i) the right of the recipient to see the evidence contained in his VA file which underlies the proposed termination;

(ii) the right of the recipient to submit written materials to the VA contesting the facts and/or law which underlie the intended termination.

(c) An in-person interview with a VA representative, if requested by the recipient, to discuss the matters in controversy, which interview shall take place promptly and during the pre-termination notice period. The said interview need not be in the nature of an adversary hearing, nor need it include an opportunity for the recipient to be represented by counsel or to present live testimony or to rebut and/or confront witnesses and evidence against him (except as hereinabove provided). Further, neither the interviewer nor the person deciding the matter need be an "impartial decision-maker" as defined in *Goldberg v. Kelly,* [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969)].

II

We first consider whether the district court had jurisdiction to review the VA's procedures for suspending or terminating student-veterans' educational benefits. The Administrator contends that jurisdiction is barred by 38 U.S.C. § 211(a), which states:

[T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

In *Johnson v. Robison,* 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–1169, 39 L.Ed.2d 389 (1974), the Supreme Court held that section 211(a) does not preclude judicial review of the constitutionality of veterans' benefits legislation. *Hernandez v. Veterans' Administration,* 415 U.S. 391, 393, 94 S.Ct. 1177, 1178, 39 L.Ed.2d 412 (1974); *Moore v. Johnson,* 582 F.2d 1228, 1232 (9th Cir. 1978). The Court stated:

---

1. An amendment to 38 U.S.C. § 1790, which became effective on November 23, 1977, now requires the Administrator to "concurrently provide written notice" to eligible veterans upon the discontinuance of their benefits. 38 U.S.C. § 1790(b)(2). Because such concurrent notice was given in the instant case, even though this amendment was not yet enacted, the amendment's passage does not affect any of the issues in this case.

The prohibitions [of § 211(a)] would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts. Appellee's constitutional challenge is not to any such decision of the *Administrator*, but rather to a decision of *Congress* to create a statutory class entitled to benefits that does not include I–O conscientious objectors who performed alternative civilian service. Thus, as the District Court stated: "The questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged."

*Johnson v. Robison, supra,* 415 U.S. at 367, 94 S.Ct. at 1166 (emphasis in original).

We have interpreted *Robison* to require an examination of the "substance" of an action, to determine whether it challenges a "decision of the Administrator on a 'question of law or fact concerning a benefit provided by a law administered by the Veterans Administration,'" *Moore v. Johnson, supra,* 582 F.2d at 1232, or instead challenges the constitutionality of an Act of Congress. *Id.* Only actions within the latter category are reviewable. *Id.* at 1232–33. In conducting such an examination, we are assisted by the legislative considerations that prompted the passage of section 211(a). The Court in *Robison* identified two primary purposes:

(1) to insure that veterans' benefits claims will not burden the courts and the

Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.

*Johnson v. Robison, supra,* 415 U.S. at 370, 94 S.Ct. at 1167 (footnotes omitted).

The class asserts that the procedures used by the VA to suspend and in some cases terminate the class members' educational assistance payments violated the Fifth Amendment. The district court found: "No plaintiff herein is challenging a *substantive* decision by the VA to suspend, reduce, set off or terminate an individual's educational benefits. . . . The sole issue before the Court involves the nature and extent of due process procedural requirements." (Emphasis in original.) Thus, the issue is not whether the Administrator ruled incorrectly on the class' entitlement to benefits, but whether Due Process compels certain procedural safeguards in advance of such rulings. At the time this injunction was issued, neither the congressional statutes, 38 U.S.C. § 1651 *et seq.,* nor the regulations promulgated thereunder by the Administrator, provided any such safeguards. We interpret the "substance" of the class' complaint to be that an Act of Congress lacking such protections, when coupled with an agency's failure pursuant to its delegated administrative powers (*see* 38 U.S.C. § 210(c)(1)) to institute procedural protections, is unconstitutional. So framed, the action challenges the constitutionality of veterans' benefits legislation and is, according to *Robison,* reviewable.[2]

---

**2.** In *Robison* the constitutional challenge was directed at an existing statutory provision. Here the constitutional challenge is directed at the absence of a provision—in statute or in regulations enacted pursuant to statutory authority—guaranteeing adequate procedural protections. We do not think that this apparent distinction matters. The gravamen of both challenges is that Congress, by statute, authorized unconstitutional government action. Congress cannot, of course, insulate such constitutional deficiencies in a statutory scheme by mere silence: to construe section 211(a) as

confining judicial review to challenges to existing statutory provisions would enable Congress, by artful, draftsmanship, to deprive citizens of the right to challenge, in court, unconstitutional government actions. This would "raise serious questions concerning the constitutionality of § 211(a)." *Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (footnote omitted). Moreover, no reason is suggested, and we can think of none, why litigation over the *absence* of procedural safeguards would implicate Congress' twin concerns in enacting section 211(a)—avoiding

In *Moore v. Johnson, supra,* which involved a Due Process challenge to the VA's failure to provide a hearing prior to relocating veterans receiving domiciliary care in VA facilities, we declared:

> [I]t is not unreasonable to regard the complaint, despite its lack of precision, to allege that the failure of 38 U.S.C. §§ 601–628, 4001–4009, and the applicable regulations thereunder, to provide for a pre-termination or pre-relocation hearing, with respect to domiciliary care and vocational training benefits, contravenes the Fifth Amendment. So regarded the challenge is to an act of Congress, not a decision of the Administrator, which, under *Johnson v. Robison, supra,* entitles the complainants to judicial review notwithstanding 38 U.S.C. § 211(a).

*Moore v. Johnson, supra,* 582 F.2d at 1232. Consequently, we found it necessary to review the merits of the plaintiffs' constitutional claim.[3]

Reviewing the VA's practices regarding suspension or termination of benefits will not frustrate either of Congress' primary purposes in enacting section 211(a). First, determination of the single Due Process question posed here will not spawn "an inevitable increase in litigation with consequent burdens upon the courts and the Veterans' Administration." *Johnson v. Robison, supra,* 415 U.S. at 371, 94 S.Ct. at 1168.

The present procedures will be judged either sufficient or inadequate: in either event, the matter will be settled in one lawsuit for more than 400 members of the affected class and our ruling on the appropriateness of the district court's order will settle most of the constitutional questions pertaining to the VA's existing procedures. *See Plato v. Roudebush,* 397 F.Supp. 1295, 1303 (D.Md.1975). Second, review of the questioned procedures does not "involve the courts in day-to-day determination and interpretation of Veterans' Administration policy." *Johnson v. Robison, supra,* 415 U.S. at 372, 94 S.Ct. at 1168. Neither we nor the district court review a ruling on eligibility for benefits. "Those matters have been committed to the Administrator's judgment; and his expertise in such matters is neither contested nor threatened here." *Plato v. Roudebush, supra,* 397 F.Supp. at 1303. What is challenged here is the constitutionality of a congressional enactment and the regulations adopted thereunder. The Board of Veterans' Appeals has in fact expressly disclaimed authority to decide such questions. *Johnson v. Robison, supra,* 415 U.S. at 368, 94 S.Ct. at 1166. We cannot.[4]

### III

To decide the constitutional claim of the class, we must employ a two-step analy-

---

an inevitable increase in litigation and day-to-day judicial determinations of VA policy—more than the litigation over the statutory *presence* of inadequate procedural safeguards approved in *Robison.*

3. In *Moore* we initially characterized the complaint as challenging a decision of the Administrator on a question of law or fact concerning a benefit provided by a law administered by the VA, thereby precluding judicial review under section 211(a). We only reached the constitutional question because we were not sufficiently certain of our characterization to refrain from addressing plaintiff's due process arguments. *Moore v. Johnson,* 582 F.2d 1228, 1232 (9th Cir. 1978). Consequently, *Moore* applied both a section 211(a) and a constitutional analysis. *Id.* at 1232–34. Here, however, we are sufficiently certain of our characterization of the class' complaint to hold that section 211(a) does not preclude judicial review and to go directly to the constitutional question.

4. We are aware that the Fifth Circuit has held, in *Anderson v. Veterans Administration,* 559 F.2d 935 (5th Cir. 1977) (per curiam), that section 211(a) bars even a constitutional challenge to the VA's hearing procedures. In *Anderson* the plaintiff asserted that the VA's denial of his claim for benefits deriving from a service-related injury violated the due process clause.

The court in *Anderson* cited only pre-*Robison* cases in support of its holding. The case from this circuit cited in *Anderson, Ross v. United States,* 462 F.2d 618 (9th Cir.) (per curiam), *cert. denied,* 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972), challenged the use of a defamatory report in the plaintiff's file as a reason for denying benefits. So framed, the *Ross* complaint attacked an isolated decision of the Administrator pursuant to a statute; it did not challenge the constitutionality of a congressional act.

sis. First, we must determine whether the class members' interest in the uninterrupted receipt of their educational assistance allowances rises to the level of a "property interest" protected by the Fifth Amendment's Due Process Clause. *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 366–67 (9th Cir. 1976). *See Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 262 & n.8, 90 S.Ct. 1011, 1017 & n.8, 25 L.Ed.2d 287 (1970). If it does, we must then ascertain what process is due the class prior to the suspension of benefits. *Mathews v. Eldridge, supra,* 424 U.S. at 332–49, 96 S.Ct. at 901–09; *Goldberg v. Kelly, supra,* 397 U.S. at 261–63, 90 S.Ct. at 1016–18; *Ong v. Tovey,* 552 F.2d 305, 307 (9th Cir. 1977); *Stretten v. Wadsworth Veterans Hosp., supra,* 537 F.2d at 365.

■ The class, if "eligible veterans" as defined by 38 U.S.C. § 1652(a)(1), and if enrolled and taking the prescribed units of approved courses at an educational institution meeting the requirements of 38 U.S.C. § 1651 *et seq.,* has a statutory entitlement to receipt of an educational assistance allowance. 38 U.S.C. § 1681(a). *See Goldberg v. Kelly, supra,* 397 U.S. at 262 & n.8, 90 S.Ct. at 1017 & n.8. Such a statutory entitlement does constitute a "property right" protected by the Due Process Clause. *Mathews v. Eldridge, supra,* 424 U.S. at 332, 96 S.Ct. at 901; *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Goldberg v. Kelly, supra,* 397 U.S. at 261–62, 90 S.Ct. at 1016–17; *Elliott v. Weinberger,* 564 F.2d 1219, 1230 (9th Cir. 1977), *aff'd in part and rev'd in part on other grounds sub nom. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Thus, the first step of the analysis is met. The second step requires us to ascertain whether the district court's injunction gives the class members greater procedural protections than they are due.

The Supreme Court, in *Mathews v. Eldridge, supra,* stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. 903.[5] In addition, the Court stated at the conclusion of its opinion:

> In assessing what process is due in this case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals.

*Mathews v. Eldridge, supra,* 424 U.S. at 349, 96 S.Ct. at 909.

The Court in *Eldridge* reversed the conclusion of the district court and the court of appeals that the Social Security Administration's (SSA's) termination of Eldridge's social security disability benefits required an evidentiary hearing. It concluded that the extensive procedures guaranteed to Eldridge by the Social Security Act (42 U.S.C. § 421(c)) and the SSA's regulations satisfied the SSA's constitutional obligations, notwithstanding the lack of an evidentiary hearing. *Mathews v. Eldridge, supra,* 424 U.S. at 335–49, 96 S.Ct. at 903–09. Among the existing statutory and regulatory pretermination safeguards that the Court considered significant were: an established au-

---

**5.** That these factors were used in *Eldridge* to scrutinize agency-established procedures for Due Process sufficiency does not mean that they are inapplicable in this setting where we are scrutinizing court-established procedures for Due Process excessiveness. If the procedures prescribed by the district court are found to provide the process that is constitutionally due the class before us, they cannot be said to be excessive.

dit procedure to determine continued eligibility for disability benefits, *id.* at 337, 96 S.Ct. at 904, letter communication, including a detailed questionnaire, and occasional telephone contact with all recipients prior to interruption of benefits, *id.*; a recipient's right to review his file and respond to preliminary adverse determinations, *id.* at 338, 96 S.Ct. at 904, and finally, a two-months' continuation of benefits after the determination of ineligibility, *id.*

In glaring contrast to the comprehensive pre-termination safeguards afforded in *Eldridge*, the class here was, prior to the district court's injunction, guaranteed absolutely no pre-termination procedural protections, either by statute or regulation. In practice, the sole procedural concession by the VA is a letter briefly explaining the reasons for termination or suspension and detailing the veteran's post-termination rights. There is virtually no advance warning to a student veteran that his or her entitlement is in danger of suspension, termination, or retroactive forfeiture. There is no provision, in statute, regulation, or practice, requiring communication with the veteran prior to such action. Thus, we cannot defer, as could the Supreme Court in *Eldridge*, to an established and comprehensive set of agency procedures.

Further, in examining the district court's order according to the three-factor *Eldridge* test, the distinctions between the instant order and the one disapproved in *Eldridge* are apparent. The procedures prescribed by the district court do not require a full evidentiary hearing of the type found unnecessary in *Eldridge*. The "in person interview with a VA representative," as the injunction's wording makes clear, is not an adversary hearing, nor need it include an opportunity for representation by counsel, presentation of evidence, or confrontation of witnesses. The district court's requirement of 30 days' written notice prior to termination of educational benefits actually provides somewhat less protection than the regulations at issue in *Eldridge*. Finally, the mandated right for a veteran to inspect his VA file and to submit written evidence contesting facts contained therein was in fact guaranteed by existing regulations to Mr. Eldridge. *Mathews v. Eldridge, supra,* 424 U.S. at 338, 345–47, 96 S.Ct. at 904, 907–08.

■ We now examine, in turn, each of the three factors specified in *Eldridge.*

### A.

The private interest at stake here is the uninterrupted receipt of benefits designed to meet veterans' subsistence and educational expenses. 38 U.S.C. § 1681(a). The district court found that while this interest is not as "vital" as the welfare subsistence payments in *Goldberg v. Kelly, supra,* or the social security benefits which required a pre-recoupment hearing in *Elliott v. Weinberger, supra,* it is nonetheless "extremely important." The court found that without their benefits, "many [veterans] would be required to leave school and lose the entire benefit of the semester or year in progress.". The district court further found that some of the class members might be forced to abandon their education entirely. We cannot say that these findings are clearly erroneous. *See United States v. United States Gypsum,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Abandonment of education is clearly .a serious deprivation. It works a forfeiture of the statutory entitlement provided by the educational assistance program, 38 U.S.C. § 1651 *et seq.* Though it may not be as "vital" as the private interest in *Goldberg,* neither are the district court's procedural safeguards under review as intrusive as those approved in *Goldberg* and disapproved in *Eldridge.*

The interest seems comparable in importance to the uninterrupted receipt of public utility services, considered by the Supreme Court to require some administrative procedure for entertaining customer complaints prior to termination. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Education comes reasonably close to utility service as a "necessity of modern life," *id.* at 18, 98 S.Ct. at 1564. *See Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954).

**B.**

The next factor we must consider is "the fairness and reliability of the existing pre-termination procedures, and the probable value, if any, of additional procedural safeguards." *Mathews v. Eldridge, supra*, 424 U.S. at 343, 96 S.Ct. at 907. We have already remarked on the absence of any provision for communication with the affected veteran prior to termination of his benefits. We now inquire into the value of the communication procedures mandated by the district court.

The 30-day advance notice provision, in conjunction with the opportunity for veterans to examine their files and submit written materials to the VA contesting facts underlying a proposed termination, will greatly minimize the chance of error by the VA in computing veterans' eligibility. *See Mathews v. Eldridge, supra*, 424 U.S. at 345–47, 96 S.Ct. at 907–08. In fact, two of the named representatives in this case were successful, after communication with the VA provoked by this lawsuit, at convincing the agency that it had erred in their particular cases. Thus, even though most of the eligibility criteria are documented in records which the college provides to the VA, direct veteran communication can be effective. Veterans may have a greater personal interest than the school in pursuing questions of their own eligibility, and hence may be better advocates. Further, we cannot ignore an important concern: the psychological value to the veteran of personally communicating with bureaucracy before it profoundly alters his entitled status. *See* Mashaw, *The Supreme Court's Due Process Calculus for Administrative Adjudication in Mathews v. Eldridge: Three Factors in Search of a Theory of Value*, 44 U.Chi.L. Rev. 28, 49–52 (1976).

The "in-person interview" prescribed by the district court serves purposes similar to the provisions for written communication and advance notice. In a recent case affirming a court of appeals order which required a public utility company to provide customers with (i) notice both of the possibility of termination and the availability of a procedure for challenging a disputed bill, and (ii) an established procedure for dispute resolution including an *"opportunity for a meeting with a responsible employee empowered to resolve the dispute," Memphis Light, Gas & Water Div. v. Craft, supra*, 436 U.S. at 12, 18, 98 S.Ct. at 1561, 1565 (emphasis added), the Supreme Court, applying the *Eldridge* three-factor test, stated that a utility customer's interest in such a hearing is "self-evident." *Id.* at 18, 98 S.Ct. at 1564. In the instant case, student veterans who speak more effectively than they write will clearly have a better chance of correcting erroneous eligibility determinations through in-person interviews. Further, of great value to the veteran is the certain knowledge that someone in the VA must listen to his or her claim. The value of the in-person interview in insuring full dialogue, even though without the panoply of rights associated with evidentiary hearings, is thus highly significant. We cannot say that the district judge misjudged its value.

One further conclusion of the district court deserves mention. A post-termination determination by the Board of Veterans' Appeals regarding benefits cannot be judicially reviewed because of 38 U.S.C. § 211(a). This is in contrast to the availability of judicial review of post-termination determinations pursuant to the Social Security Act. *See Mathews v. Eldridge, supra*, 424 U.S. at 339, 96 S.Ct. at 904. It is thus especially crucial that the VA's pretermination procedures guarantee the degree of accuracy and fairness we expect of governmental processes. The procedures mandated by the district court accord with this need.

**C.**

Finally, we must weigh the public interest in avoiding the administrative burdens that may result from the required procedures. The burden comprises the cost of requested in-person interviews and the expense of providing benefits for an additional 30 days after the initial ineligibility determination. Each cost, though difficult to

predict precisely, will be less than the costs present in *Eldridge*. In *Eldridge* benefits were already being paid for sixty days after initial notification of an eligibility problem, instead of the thirty days specified here. *Id.* at 338, 96 S.Ct. at 904. The in-person interview will cost far less than the full-scale evidentiary hearing disapproved in *Eldridge*. As the Supreme Court stated in *Memphis Light*, such a hearing should not prove unduly "burdensome." *Memphis Light, Gas & Water Div. v. Craft, supra*, 436 U.S. at 18, 98 S.Ct. at 1564. The district court, after considering the affidavits submitted by the Administrator on the cost issue, concluded that the class' interest outweighed the government's. That conclusion appears justified.

### IV

We conclude that a balancing of the three factors set forth in *Mathews v. Eldridge*, particularly considering the absence of any significant existing VA pre-termination procedural safeguards, warrants the conclusion that the district court's order was correct.

AFFIRMED.