William H. TIETJEN, Plaintiff,

v.

UNITED STATES VETERAN'S ADMINISTRATION, et al., Defendants.

No. CIV 87–1789 PHX CAM.

United States District Court, D. Arizona.

Aug. 18, 1988.

Eugene A. Burdick, Phoenix, Ariz., for plaintiff.

Michael R Arkfeld, U.S. Atty., Phoenix, Ariz., for defendants.

## ORDER

MUECKE, District Judge.

Having considered Defendants' Motion To Dismiss/Motion For Summary Judgment, filed February 1, 1988; the response and reply thereto; and the parties supplemental briefs,[1] this Court finds and concludes as follows:

---

1. After the Court heard oral arguments, the Court received three different packages in the

In this case plaintiff alleges that the Veterans Administration (VA) deprived him of due process by reducing his benefits. Plaintiff argues that the VA violated its regulations in applying Circular 21–80–7. According to plaintiff, these infractions violate the due process clause of the fifth amendment. Thus, plaintiff requests injunctive relief; restoration of his former disability status; damages, including back benefits; and attorneys fees. The Government contends that 38 U.S.C. § 211(a) precludes this Court from reviewing the VA's decision and therefore requests that the case be dismissed or that summary judgment be granted in its favor.

## BACKGROUND

From March, 1956 to January, 1958, plaintiff was a member of the United States Navy. On November 9, 1971, the VA awarded plaintiff a ten percent disability rating because of a service-connected duodenal ulcer. The VA first increased the rating to forty percent and then to sixty percent. Because of the sixty percent disability rating, plaintiff was deemed to be 100 percent unemployable. In a letter dated June 17, 1975, an adjudications officer of the VA informed plaintiff that due to the lack of change in his service-connected disability for a duodenal ulcer, the VA was continuing its sixty percent disability rating for the ulcer and his 100 percent evaluation for unemployability. Thus, the VA considered plaintiff's disabilities as having "reached a static level." See Exhibit E to Plaintiff's Response.

On September 9, 1980, the Chief Benefits Director for the VA issued DVB Circular 21–80–7. DVB Circular 21–80–7 was issued because of a high incidence of cases in which the proper control of unemployability review had not been maintained. See Exhibit E to Motion to Dismiss, Exhibit H to Response at 1. According to the Circular, a sampling disclosed that many questionable or erroneous grants of individual

unemployability had been made. The Circular applied to all recipients deemed unemployable and under the age of sixty. The recipient was to be sent a form notifying them of review. No person whose ratings had been in effect for over twenty years was subject to review. See 38 U.S.C. § 110; 38 C.F.R. § 3.951 (1987) (persons with rating for over twenty years will not have their ratings reduced except upon a showing of fraud). The people conducting the reviews were instructed not to be reluctant to review "unprotected cases" if their review indicates that an erroneous decision was made. Reductions were subject to the provisions of VAR 1105(E).

In January of 1981, plaintiff was ordered to report to the VA Hospital in Des Moines, Iowa for an examination. On January 23, 1981, plaintiff was given a chest X-ray and an upper gastrointestinal (upper GI) series. The upper GI series showed that the stomach had a "normal mucosa without evidence of ulcer crater defect." The doctor also noted that "[t]here is deformity of the duodenal bulb ..., which is most likely secondary to previous duodenal ulcer. The duodenal loop and proximal [were] small and normal." The doctor opined that the deformed duodenal bulb was due to a healed ulcer. The VA Ratings Board then determined that plaintiff only had a forty percent disability due to his duodenal ulcer. Because plaintiff's disability was rated at only forty percent, he was no longer considered unemployable. This decision was deemed effective as of May 1, 1981.

Plaintiff appealed the decision of the Ratings Board. In support of his appeal, plaintiff presented the following evidence: a report from his personal physician since 1977; a report from the Broadlawn Medical Center; copies of medical treatises on psychiatry; reports from Iowa Methodist Hospital concerning the treatments plaintiff received from 1960–67; a statement from Roger Dagel, a person who worked in a

mail relating to this case. The first two packages were sent in envelopes purportedly from the Veterans of Foreign Wars office in Phoenix. The second and third packages contained information from plaintiff's file from the Veteran's

Administration. Because these packages were sent ex parte, they were not considered by the Court. They were, however, placed in the official file.

clinic where plaintiff had been treated for emotional instability; and a report from Dr. L.A. Utterback. In July of 1981, plaintiff underwent a second examination. Once again, an upper GI series was done. The second test also showed that there were no obstructive lesions, deformities or ulcerations.

In December of 1981, a hearing was held before the Board of Veterans Appeals. Plaintiff testified and was represented by the Disabled American Veterans. Subsequent to the December hearing, the Board received the report of Dr. A.E. Zachow, who had performed an upper GI series on plaintiff, and a report from Dr. Harold R. Deal. In its June 2, 1982 decision, the Board assigned plaintiff a forty percent disability rating for his moderate post gastrectomy syndromes. The Board also upheld the decision that plaintiff did not meet the criteria for an award of unemployability due to his service-connected disability.

Plaintiff appealed the Board's decision to a larger panel. The Board stated that was reconsidering the issues because of letters received from the plaintiff through his congressman. The congressman took exception to the Board's decision and requested reconsideration. At this hearing, plaintiff was represented by an attorney, Stephen W. Connors. The second panel considered the evidence submitted to the first panel and affirmed the decision of the original panel and the Ratings Board. *See* Exhibit D to Defendants' Motion.

Despite the fact that the decisions of the Board are final, *see* 38 U.S.C. § 4003; 38 C.F.R. § 19.185(a), plaintiff filed a complaint in this Court alleging that the actions of the Veterans Administration deprived him of his fifth amendment right to due process. Based on 38 U.S.C. § 211 and several cases interpreting that statute, the defendants have filed the instant motion to dismiss/motion for summary judgment.

## ANALYSIS

### A. *Suing the VA as an Agency*

■ This Court must initially address the propriety of naming the Veterans Ad-

ministration as a defendant. In the Ninth Circuit, it is inappropriate to bring an action against the VA as an agency. *See ESP Fidelity Corp. v. HUD*, 512 F.2d 887, 890 (9th Cir.1975). Therefore, the VA is dismissed as a party defendant. Thus, the Court must determine whether the Administrator is entitled to have his motion to dismiss granted.

### B. *Dismissal Under § 211(a)*

■ Congress enacted § 211(a) in an attempt to insure that the technical and complex determinations and applications of VA policy would be adequately and uniformly made, and to insure that VA claims would not burden the federal courts by limiting court review of VA administrative decisions. *See Johnson v. Robison*, 415 U.S. 361, 370, 94 S.Ct. 1160, 1167, 39 L.Ed.2d 389 (1974). Section 211(a) provides that

the decisions of the Administrator on *any question of law or fact* under any law administered by the Veterans' Administration ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action of mandamus or otherwise. (emphasis added).

Section 211(a) applies to judicial review of "decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans." *Johnson*, 415 U.S. at 367, 94 S.Ct. at 1166 (emphasis in original). A decision of law or fact falls under a statute when a court becomes involved in the *interpretation* or *application* of a particular provision of the statute to a particular set of facts. *Id.; see also Devine v. Cleland*, 616 F.2d 1080, 1084 (9th Cir.1980) (challenges to the decision of the Administrator on questions of law or fact concerning benefits provided by law and administered by the VA are not reviewable). Section 211(a) does not, however, prohibit judicial consideration of a constitutional challenge to laws providing benefits to veterans. *Johnson*, 415 U.S. at 373, 94 S.Ct. at 1169; *Devine*, 616 F.2d at 1084 n. 2. In order to determine whether a case involves a challenge to

the constitutionality of the laws or involves the interpretation of a particular provision of the laws to a particular set of facts, the courts must examine the substance of the claims. *See Devine*, 616 F.2d at 1084.

In his complaint, plaintiff alleges that defendants' misinterpretations of 38 C.F.R. §§ 3.327, 3.343 and 3.344 denied him his constitutional right to due process of law. Plaintiff alleges two violations of 38 C.F.R. § 3.327. First, plaintiff alleges that because of the 1975 letter, which stated that his condition had become static, he could not be reexamined. *See* 38 C.F.R. § 3.327(b)(2)(i) ("In service-connected cases, no reexamination will be scheduled ... [w]hen the disability is established as static...."). Accordingly, plaintiff argues that his reexamination was in clear violation of § 3.327(b)(2)(i).

In order for Circular 21–80–7 to have affected a person, someone within the ratings department of the VA first had to determine that plaintiff's file warranted a reevaluation, i.e., that the initial benefits decision was erroneous. Thus, not all persons in plaintiff's category (persons considered static with sixty percent disability and 100 percent unemployability) would necessarily be reevaluated. Second, the reevaluations were to apply only to "unprotected" persons. The VA therefore had to interpret its regulations and determine whether a given beneficiary was protected. Third, the review specifically stated that certain persons protected by statute and regulations were not to be reviewed. The circular also stated that reviews were to be governed by the provisions of certain VAR forms. Moreover, in reviewing any given file the VA had to interpret conflicting regulations. *Compare* § 3.327(b)(2)(i) ("no reexamination will be scheduled ... [w]hen the disability is established as static"), *with* § 3.329 (every person in receipt of compensation shall submit to examinations when required by the VA under regulations or "other proper authority"); [2] § 3.327(d) ("The policy as to reexaminations will not

be construed as modifying in any way the right of rating agencies to request such additional medical ... examinations ... as may be necessary to furnish complete evidence on which rating decisions will be based.").

Plaintiff's complaint is not about some arbitrary action in which the VA acted in complete violation of its regulations. In order to even have a benefits decision questioned, an agency official had to review a file, interpret Circular 21–80–7, interpret various regulations, then comply with various VAR forms. Even then plaintiff would not necessarily be denied benefits. Only after the VA reviewed the results of plaintiff's medical tests did it reduce his benefits. Accordingly, the Court concludes that plaintiff's first alleged violation of § 3.327 is an attempt to have this Court review the interpretation and application of the statutes and regulations to this particular set of facts.

In plaintiff's second allegation of a violation of § 3.327 he asserts that he could be reexamined only in cases in which "disability is likely to improve materially in the future," 38 C.F.R. § 3.327(a). *See* Complaint at 6–7. On its face, this allegation requires this Court to review the application of a regulation to this particular set of facts. Some person within the VA has to make the policy decision that a person is "likely to improve." Indeed in this case, the medical evaluation that was eventually performed showed that plaintiff had improved since the mid–1970's. If this Court were to rule that every ordered examination could be litigated because of § 3.327(a), we would allow a flood of litigation and draw into question the policy decisions of the VA. Such a review is not allowable, however, because Congress has said it is not. *See Johnson*, 415 U.S. at 370, 94 S.Ct. at 1167.

Plaintiff also argues that the VA violated § 3.343 twice. *See* Complaint at 5–6. Plaintiff first complains that the 1981 medi-

---

**2.** Congress delegated to the VA the authority to make all rules and regulations necessary to carry out the laws administered by it. 38 U.S.C. § 210(c)(1). This power includes the power to issue circulars like the Circular 21–80–7. *See Evergreen State College v. Cleland*, 621 F.2d 1002, 1009 (9th Cir.1980).

cal evaluations do not show a "material improvement in physical or mental condition" because there were no findings as to the circumstances under which the improvement occurred. Response at 15. The VA regulations do not require that it state on the record its conclusions. Section 3.343 merely requires that the examination showing improvement be evaluated in conjunction with the circumstances, i.e., "all the facts of record." In order for this Court to reach the conclusion that § 3.343 was violated, this Court actually would have to evaluate the intricate decision making process of the VA. Section 211(a) precludes this Court from so acting.

Plaintiff's final complaint about § 3.343 is the way in which the VA determined individual unemployability. Response at 15–17. Once again, plaintiff wants this Court to actually go through the specifics of the VA's decision making process. At least two times plaintiff objects to the VA's interpretation of § 3.343(c). Response at 16. One of the main purposes of § 211(a) is to prevent federal courts from reviewing "the *interpretation* of a particular provision ... to a particular set of facts." *See Johnson*, 415 U.S. at 367, 94 S.Ct. at 1166. Accordingly, this Court concludes that plaintiff really wants this Court to review the substance of the VA's implementation of § 3.343(c) in this particular case, which the Court cannot do.

The final regulation that plaintiff says defendants violated is § 3.344.[3] Plaintiff argues that the ratings board erred in determining that the examinations were full and complete because the doctors performing them complained that they could not make a complete evaluation. The evaluations were incomplete because the file omitted certain medical records. The doctors merely wanted the entire file so that they could make a better *suggested* disposition; the Ratings Board made the ultimate decision. The important thing to consider is whether the Ratings Board acted appropriately. In this case, the Ratings Board act-

ed and the Board of Veterans Appeals, with two doctors on the final panel concurring, approved the decision. This Court cannot tell doctors on an administrative board that they should have considered more evidence in order to adequately make their decision. The purpose of Congress in enacting § 211(a) was to prevent this Court from performing this sort of critical review.

■ After having reviewed all of the allegations in the complaint, this Court concludes that the substance of the complaint is an attempt to have this Court review questions of law and fact as applied to this particular set of facts. Because of the novelty of plaintiff's legal arguments, however, this Court feels compelled to address plaintiff's constitutional arguments. *See Moore v. Johnson*, 582 F.2d 1228, 1232 (9th Cir.1978) ("We, also, are in sufficient doubt to move us to confront and dispose of [the] constitutional arguments.").

C. *The Alleged Constitutional Violations*

■ This Court is bound to follow the jurisdictional parameters prescribed by Congress. Because Congress has the right to prescribe this Court's jurisdiction, it "may withhold from any court of its creation jurisdiction of any of the enumerated controversies." *See Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). Moreover, there are issues involving public rights, which may be presented in such form that the federal judiciary is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the federal courts. *See Murray's Lessee v. Hoboken Land and Improvement Co.*, 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856); *see also* Hart, *The Power of Congress To Limit The Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv.L.Rev. 1362, 1386 (1953) (the final authority to deter-

---

**3.** Section 3.344 provides that "[r]atings on account of diseases subject to temporary or episodic improvement, e.g., ... duodenal ulcer, ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated."

mine questions of law can be given to executive or administrative officials in many situations). Clearly, Congress intended to divest federal courts of jurisdiction to review the VA's interpretation of its regulations and benefit decisions.

When Congress divests a federal court of jurisdiction to review a substantive area of law, the theoretical question then becomes what protects the people from totally arbitrary actions of the State. In certain areas of law, the existence of habeas corpus jurisdiction, coupled with the constitutional guarantee of due process, has implied a regime of law. *See* Hart, *supra* at 1387–90 (discussing various cases in which the courts have invalidated the jurisdictional limitation and proceeded under the general grant of jurisdiction). By imposing such a regime, the federal courts ensure that reasonable procedures are being used in the exercise of statutory authority. *See id.* at 1390. The goal is to see to it that Congress does not subject the people "to an uncontrolled official discretion." *See id.* If the State acts without due process, the acts can be struck down as unconstitutional. *Cf. Chin Yow v. United States*, 208 U.S. 8, 12, 28 S.Ct. 201, 202, 52 L.Ed. 369 (1908) ("The decision of the Department is final, but that is on the presupposition that the decision was after a hearing in good faith, however summary in form."); *The Japanese Immigrant Case (Yamataya v. Fisher)*, 189 U.S. 86, 100–01, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903) (even though the executive branch has the power to finally determine whether an alien may enter or remain in this country, administrative officers may not disregard the principles that inhere in due process of law); Hart, *supra,* at 1390 & n. 85.

The facts of this case show that the VA does not submit beneficiaries to a system operating with uncontrolled discretion.[4] In this case for example, plaintiff was given two medical examinations; was able to present evidence that was contrary to the VA's evidence; was represented by counsel in an uncontested, *ex parte* hearing; and had two different reviews by the Board. After reviewing the medical evidence, the VA determined that plaintiff was forty percent disabled rather than sixty percent. Such a process is not evidence of uncontrolled discretion. Therefore, the mere fact that this Court cannot review the individual decisions within the VA's decision making process does not mean that the VA is able to act arbitrarily. The VA must act, as it did here, in accordance with general principles of due process.[5]

Plaintiff's real complaint is that he believes that the VA failed to follow its regulations. Plaintiff argues that once he was required to submit to a process which satisfies that requirements of procedural due process,[6] the VA's violation of its regu-

---

**4.** In his supplemental brief and during oral argument, plaintiff conceded that he is not challenging the adequacy of the VA's procedures *after* plaintiff was required to submit to a medical exam.

**5.** Despite this conclusion, the Court is bothered by § 211(a). The Court knows that without judicial review veterans can go through administrative nightmares. *See* Davis, *Veterans' Benefits, Judicial Review, And the Constitutional Problems of "Positive" Government,* 39 Ind.L.J. 183, 190–200 (1964) (discussing the cases of Di Silvestro and Steinmasel). Judicial review is frequently a means by which the federal courts ensure that an agency correctly interprets and implements its regulations. Why Congress continues to foster the jurisdictional distinction between veterans cases and, for example, social security cases is baffling. Both types of cases call for review of complex and technical medical evidence. In the eyes of this Court, § 211(a) is a modern "Henry VIII clause." *See id.* at

185–90 (In England, laws that prohibited judicial review of ministerial regulations and orders were said to contain "Henry VIII clauses.").

**6.** In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that there are three factors to consider in evaluating the parameters of due process: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used; and (3) the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substituted procedural requirements would entail. 424 U.S. at 335, 96 S.Ct. at 903. The deprivation of VA benefits is extremely important property interest. *See Devine,* 616 F.2d at 1087. Because of the medical testing, the ability to present evidence, the right to representation by counsel, and a decision based on the evidence, the Court concludes that the present pro-

lations is a per se violation of due process. As authority for his argument plaintiff cites *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

In *Shaughnessy*, the Supreme Court reviewed an attack on the denial of an application for suspension of deportation. In *Shaughnessy*, the Attorney General had created a list of over one hundred people, including petitioner, that were unsavory and whom he wished deported. The Attorney General circulated this list to the Board of Immigration Appeals. The Supreme Court ruled that the Board of Immigration Appeals acted improperly because they did not exercise the discretion that the regulations required them to exercise. The Supreme Court concluded that the Board's decision had been dictated by the Attorney General. Such a scenario is evidence of an administrative agency that is exercising "uncontrolled official discretion." *See* Hart, *supra*, at 1388–94 (discussing immigration cases).

In *Shaughnessy*, the petitioner was denied due process because the decision on his application suspension of deportation was not made by an impartial decision maker and was not based on the evidence produced. Here, the decision to reduce plaintiff's benefits was not dictated by the mere fact that plaintiff was ordered to report to the VA Hospital in Des Moines, Iowa. Plaintiff had two physical examinations performed, he attended hearings at which he was represented by counsel, and was able to have the Board give him a second hearing because of the pressure of a congressman. Plaintiff has not produced any evidence that the Ratings Board or the two panels of the Board of Veterans Appeals acted on anything but the evidence submitted. While interpretations of the regulations were made, the VA has not evidenced "uncontrolled official discretion." Thus, *Shaughnessy* is distinguishable on its facts.

Even assuming that plaintiff can prove a violation of VA regulations, plaintiff must then show that these violations were of a constitutional magnitude. In a nutshell, plaintiff's constitutional argument is that even though the VA was not statutorily mandated to distinguish between static and non-static disabilities, and a regulation states that persons with static disabilities are not to be reevaluated, a beneficiary's constitutional right to due process is violated if the VA initiates a constitutionally adequate process.

■ The fundamental fairness guaranteed by the due process clause does not require that the procedures used to guard against an erroneous deprivation of property be so comprehensive as to preclude any possibility of error. *See Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985). The fundamental fairness of the procedures does not turn on the result obtained in any particular case; "rather, 'procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions.'" *See id.* at 321, 105 S.Ct. at 3189 (quoting *Mathews*, 424 U.S. at 344, 96 S.Ct. at 907). Moreover, the marginal gains from affording an additional procedural safeguard may often be outweighed by the cost to society for providing such a safeguard. *See id.*

■ More importantly, the mere violation of a regulation does not necessarily give rise to a violation of the due process clause. In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the Supreme Court held that the due process clause was not violated merely because the Internal Revenue Service (IRS) violated one of its own internal regulations. 440 U.S. at 751–52, 99 S.Ct. at 1471–72. During the course of auditing Caceres, an IRS agent violated IRS regulations by taping conversations between himself and Caceres. IRS regulations required that before a tape recording was made the agent had to obtain proper authorization. Because of the violation of the IRS regulation, Caceres moved to suppress the evidence at his trial.

cedures would satisfy the requirements of procedural due process.

'The Supreme Court held that suppression was, not required. The Court reasoned that a court's duty to enforce a regulation was evident in those cases in which compliance with the regulation was mandated by the Constitution or by federal law. 440 U.S. at 749, 99 S.Ct. at 1470. The Court found that no federal law required the IRS adopt any particular procedures for engaging in consensual monitoring and recording. *Id.* The Court also held that the Constitution did not protect people in the defendant's position. Citing other criminal cases in which the Court had upheld the use of evidence based on conversations with criminal defendants, the Court held that the defendant's fourth amendment rights were not infringed. *Id.* at 750–52, 99 S.Ct. at 1470–72.

Neither the Constitution nor acts of Congress require the VA to adopt the regulations at issue. In fact, Congress simply delegated to the VA the authority to make all the rules and regulations necessary to carry out the laws it administered. 38 U.S. C. § 210(c)(1). Given this broad grant of authority, and because the VA's procedures comport with the general principles of due process, this Court concludes that even if the VA violated one of its regulations, no due process violation occurred.

### CONCLUSION

Having reviewed the complaint, this Court concludes that the substance of plaintiff's allegations are attempts to have this Court review questions of law and fact as applied to these particular facts. By enacting § 211(a), Congress divested federal courts of jurisdiction to hear non-constitutional challenges. Assuming that plaintiff's case does raise a constitutional issue, however, this Court holds that plaintiff was not deprived of due process of law. The process used to reduce plaintiff's benefits was subject to a regime of law. Furthermore, the mere fact that the VA may have violated its regulations does not mean that a due process violation occurred. Neither the Constitution, nor Congress, require that the VA follow the regulations at issue.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss/Motion For Summary Judgment is granted.